NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES DURST, | Honorable Jerome B. Simandle |
| Plaintiff, | |
| v. | Civil No. 03-CV-5186(JBS) |
| FEDEX EXPRESS | **OPINION** |
| Defendant. | |

APPEARANCES:

Dennis J. Crawford, Esq.
Robert Feldman, Esq.
LAW OFFICES OF DENNIS CRAWFORD
619 S. White Horse Pike
Audubon, NJ 08106
      Attorney for Plaintiff

Dara P. Newman
SIMON MORAN, P.C.
1600 Market Street
Suite 2020
Philadelphia, PA 19103
      Attorney for Defendant

**SIMANDLE, District Judge:**

This matter comes before the Court upon a motion by defendant FedEx Express Corporation ("FedEx") for summary judgment against plaintiff James Durst. Plaintiff originally filed his complaint in the Superior Court of New Jersey, Law Division, Burlington County. The matter was then removed to this Court by FedEx pursuant to 28 U.S.C. §§ 1332 and 1441(a). Plaintiff's complaint alleges only a single claim -- for retaliation pursuant to the New Jersey Conscientious Employee

Protection Act ("CEPA"), N.J.S.A. 34:19-3. FedEx filed this motion for summary judgment on March 8, 2005, arguing that Plaintiff has not established a prima facie case for retaliation under CEPA and that FedEx is entitled to judgment as a matter of law. For the reasons discussed herein, the Court having determined that there are genuine issues of material fact, FedEx's motion for summary judgment must be denied.

I.  **BACKGROUND**

From November 14, 2002 until May 17, 2003, Plaintiff was employed as a part-time courier at FedEx's Princeton, New Jersey distribution station.[1] (Deposition of James Durst at 16, Def.'s Ex. 1F.) Plaintiff worked the afternoon shift four days each week and the morning shift on Saturdays. (Durst Depo. Tr. 82-83.)

A.  **Plaintiff's Daily Inspection Duties and FedEx's Maintenance Procedures.**

Plaintiff's claim involves factual allegations that significant safety problems existed with the delivery trucks that he was required to use while on the job at FedEx. As such, a discussion of the details of Plaintiff's daily inspection duties and FedEx's maintenance vehicle procedures is necessary. As part of his daily courier duties, Plaintiff conducted inspections of his vehicle both before and after every shift. (Durst Depo. Tr.

---

[1] FedEx Express is the world's largest express transportation and courier service with operations in 220 countries.

at 91.) According to FedEx protocol, each courier was required to follow a vehicle inspection checklist that requires the courier to check his or her vehicle for fluid leaks, then circle the entire vehicle before entering the cab. (Def.'s Statement of Facts ¶ 3.)  During the twice-daily inspections, the courier is also required to inspect items including the vehicle's headlights, emergency four-way flashers, exterior mirrors, tires, fluid levels, belts and hoses, doors and seat belts.  (Id.) Finally, the courier is required to check for any "play" in the steering wheel and test the brakes of the vehicle. (Id.)  Each FedEx courier performs pre-trip and post-trip inspections every day and reports the results of the inspection on a Vehicle Inspection Report ("VIR"). (Durst Depo. Tr. at 170-71.)[2]

FedEx also retains full-time mechanics at the Princeton station to address safety and maintenance issues with its fleet of trucks. (Declaration of Vicki Aker ¶ 5, Def.'s Br. Ex. 2.) Safety or maintenance issues noted by couriers on VIRs are provided to FedEx's mechanics for redress. (Deposition of Charles

---

[2]  FedEx claims that all couriers were supposed to report every safety and maintenance issue the courier had with his or her vehicle on a VIR. (Def.'s Statement of Facts ¶ 5.) Plaintiff claims, however, that he reported some safety issues, such as the existence of bald tires on his vehicle, in the form of a oral complaint rather than including such information on a VIR. (Durst Depo. Tr. at 105-10.)  Plaintiff, however, also admitted in his deposition testimony that if he indicated in his VIR that a truck was in satisfactory condition, then he believed the truck was in satisfactory working condition.  (Id. at 242.)

3

Brown at 54, Def.'s Br. Ex. 1H.) Plaintiff claims, however, that
not all of the safety issues highlighted in his VIRs were
addressed by FedEx mechanics. (See Pl.'s Counter-statement of
Undisputed Material Facts ¶¶ 44-45.) FedEx claims that if a VIR
identified a problem, the vehicle would not go on the road again
until a FedEx mechanic took necessary corrective action.
(Deposition of Thomas Adams at 18, Def.'s Br. Ex. I.)[3]  In
addition to this maintenance procedure, FedEx mechanics conducted
regular preventative maintenance on vehicles every four months,
(Declaration of Thomas Adams ¶ 6, Def.'s Br. Ex. 3), and
performed random audits on all trucks in FedEx's fleet.
(Deposition of David Wilson at 14-15, Def.'s Br. Ex. 1I.)

   **B.   Plaintiff's Complaints and Reports of Safety Issues.**

   Plaintiff testified that he experienced numerous safety
issues with vehicles he was required to drive for FedEx.
Specifically, Plaintiff complained of "hazardous mirrors" that he
could not see out of, violent shaking of the truck's steering
wheel when the truck reached certain speeds, bald tires (that he
attributed to nearly causing an accident), smoke "pouring out of
the heater vents" (preventing him from seeing the road and
causing him to immediately pull over), and multiple vehicle

---

   [3]  This fact is disputed by Plaintiff.  In particular,
Plaintiff points out a number of instances that "establish that
vehicles with identified problems by mechanics were placed on the
road."  (See Pl.'s Opp. Br. Ex. I, K, and L.)

breakdowns (including one on a highway in which Plaintiff's truck stalled and blocked traffic). (Durst Depo. Tr. at 118, 124-25, 129, 133-38, and 279.)

The parties disagree about whether Plaintiff properly made management at FedEx aware of his safety concerns.  Plaintiff claims that he spoke to FedEx manager Ramesh Arora "regarding a number of maintenance issues" at least three times. (Id. at 111-12; see also Deposition of Ramesh Arora at 20.)[4]  According to Plaintiff, his complaints to Arora included oral complaints about trucks not being operation and safety belts not working. (See id.)  Plaintiff testified that he also voiced complaints about vehicle safety directly to both his manager Vickie Aker (specifically, regarding a seatbelt that was not working) and to Saturday manager Gary Brown (regarding the multiple truck breakdowns he experienced). (See id. at 111-12, 116.)[5]  Plaintiff stated that he voiced such complaints to Gary Brown on four separate occasions.  (See id.) Plaintiff also testified that he

_____

[4]  FedEx disagrees with this fact and argues that the Court should discount Plaintiff's statement as Plaintiff could not recall specific dates, topics or witnesses other than a single conversation he had with Arora about "bald tires" that lasted for less than 30 seconds.  (Pl's Reply Br. at 6-7.)

[5]  FedEx disputes much of Plaintiff's testimony regarding his conversations with Akers and Brown as being contradictory or that Plaintiff's complaints to Brown were made only after Plaintiff had voluntarily terminated his position at FedEx. (Def.'s Response to Pl.'s Counter-statement of Undisputed Facts ¶ 89.)

(1) regularly complained about various safety issues in his VIRs
and (2) once complained about safety issues to a FedEx mechanic.
(<u>Id</u>. at 100.)

**C.   The Events of May 17, 2003.**

On Saturday, May 17, 2003, Plaintiff was unable to insert
the key into the ignition of his truck after making a stop on his
route. (<u>Id</u>. at 134.) FedEx sent a replacement truck out to
Plaintiff. (<u>Id</u>. at 134.) According to the driver of the
replacement truck, Jason McGinley, Plaintiff told McGinley that
Plaintiff planned to quit. (Declaration of Jason McGinley ¶ 2,
Def.'s Br. Ex. 4.) Plaintiff denies making such a statement,
testifying that he did not recall having such a conversation with
the courier. (Durst Depo. Tr. at 139-40.)

After moving his remaining undelivered packages to the
replacement truck, Plaintiff returned to FedEx's station,
deciding not to finish his route. (<u>Id</u>. at 142-43.) At the
station, Plaintiff made preparation to leave and placed three
remaining undelivered packages in the designated area for
undelivered packages. (<u>Id</u>.) Plaintiff then told Saturday manager
Gary Brown that he would not complete his route. (<u>Id</u>.) In
response, Brown told Plaintiff, "I take it if you're not
delivering these packages, then you're quitting." (<u>Id</u>. at 156.)
Plaintiff testified that, in response to Brown's statement, he
advised Brown that he was not quitting and that he would not

6

deliver his remaining packages because of his unaddressed safety concerns and the prior vehicle breakdowns. (Id. at 155.) Two FedEx employees stated that they overheard the exchange between Gary Brown and Plaintiff and heard Plaintiff tell Brown that Plaintiff quit. (See Deposition of Gary Brown at 44, Declaration of Cherie Foldes ¶ 6, and Declaration of Robert Campbell ¶ 2.) Contrary to the statements of Brown, Campbell and Foldes, Plaintiff testified that he never told Brown that he was quitting. (Id. at 156-57.) Instead, Plaintiff testified that it was not possible for anyone to have heard his conversation with Brown as Plaintiff and Brown spoke privately in an area of FedEx's warehouse where they could not be overheard by other employees. (Durst Depo. Tr. at 151-57.) Plaintiff testified that, at the conclusion of his conversation with Brown, Brown told Plaintiff that Brown needed a letter from Plaintiff stating that he was quitting. (Id. at 156.) Plaintiff testified that he again told Brown that he was not quitting. (Id. at 154) Upon insistence from Brown, Plaintiff provided Brown with a letter stating the following:

> At this time I refused to operate one of the unsafe FedEx vehicles.  Today is the 4th time in my short time here @ FedEx that my truck has serious mechanical and safety issues [sic].  Nothing has ever been done to rectify these serious safety issues. The VIR reports indicated these [sic]. Up until these vehicles are safe to operate, I would be glad to drive a safe vehicle for FedEx [sic].

(Def.'s Br. Ex. 1G.)

7

On the morning of Monday, May 19 -- a few hours before Plaintiff's next scheduled shift -- Plaintiff received a "termination letter." (Durst Depo. Tr. at 153.) After receiving the letter, Plaintiff tried unsuccessfully to resolve matters with representatives of FedEx's human resources, expressing to them that he had not quit and wanted his job back.[6] (Id. at 227.) Having failed to resolve matters with Human Resources, Plaintiff did not return to work. (Id. at 153.)

## II.   **DISCUSSION**

### A.   **Summary Judgement Standard.**

FedEx contends that Plaintiff has failed to establish a prima facie case for retaliation under the New Jersey Conscientious Employee Protection Act ("CEPA"), under N.J.S.A. 34:19-1 et seq. FedEx moves for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P. A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson

---

[6] Specifically, Plaintiff claims that he spoke with Human Resource Representatives Carlos Vasquez and Jack Sheehan. (Id. at 227-28; Deposition of Jack Sheehan at 14-16, Def.'s Br. Ex. H.)

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250.

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's

case." Celotex Corp., 477 U.S. at 325.

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50. Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

**B.   The New Jersey Conscientious Employee Protection Act.**

The New Jersey Conscientious Employee Protection Act, commonly known as the "whistle-blower" statute, prohibits employers from taking retaliatory action against an employee who (1) discloses or threaten to disclose to a supervisor or public body an employer's wrongful activity or policy, (2) provides information to or testifies before a public body conducting an investigation into any violation of law, or (3) objects to or refuses to participate in an activity or practice which the employee reasonably believes is in violation of law or is incompatible with a clear mandate of public policy. See N.J.S.A. 34:19-3. Because the New Jersey legislature's intent in enacting CEPA was "to protect employees who report illegal or unethical

10

work-place activities," the New Jersey Supreme Court has held that courts should construe CEPA liberally in order "to achieve its remedial purpose." Roach v. TRW, Inc., 164 N.J. 598 (2000)(quoting Barratt v. Cushman & Wakefield, 144 N.J. 120, 127 (1996)).[7]

In analyzing a claim made under CEPA, a court must conduct a three-step analysis.  First, the court must determine if the plaintiff has established a prima facie case of retaliatory discharge under CEPA. See Blackburn v. United States, 179 F.3d 81, 92 (3d Cir. 1999).  Once plaintiff has established a prima facie case, the burden of production shifts to defendant to articulate some legitimate nondiscriminatory reason for making the adverse employment decision. See id. (citing Kolb v. Burns, 320 N.J. Super. 467, 727 A.2d 525, 530-31 (N.J. Super Ct. App. Div. 1999)). Once defendant articulates a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff, who, in order to survive summary judgment, must raise an issue of fact that the articulated reason for the adverse decision is a pretext for the retaliation or that a

_____

[7] In enacting CEPA, the New Jersey legislature codified a cause of action for retaliation that was first recognized by the New Jersey Supreme Court in Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980), which protected at-will employees who had been terminated in violation of a clear mandate of public policy.  See Higgins v. Pasack Valley Hosp., 158 N.J. 404, 417-18 (1999). CEPA thus created a statutory exception to the general rule that an employer may fire an at-will employee with or without cause. See id. at 418.

discriminatory reason more likely motivated the employer.  <u>See</u>
<u>id</u>.(<u>citing</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802
(1973)).

  **C. Plaintiff's Prima Facie Case**

  The Court must first address whether Plaintiff has
established a prima facie case of retaliatory discharge under
CEPA.  To establish a prima facie case, Plaintiff must show that
(1) he reasonably believed that FedEx's conduct was violating
either a rule or law or regulation promulgated pursuant to law;
(2) he disclosed or threatened to disclose the activity to a
supervisor or public body; (3) an adverse employment action was
taken against him; and (4) a causal link exists between his
whistle-blowing activities and his discharge.  <u>See</u> <u>Blackburn</u>, 179
F.3d at 92; <u>McCullough v. City of Atlantic City</u>, 137 F. Supp. 2d
557, 573 (D.N.J. 2001); <u>Kolb</u>, 727 A.2d at 530-31.

   **1. Plaintiff's Belief that FedEx's Conduct Violated a
    Rule, Law or Mandate of Public Policy.**

  In its moving papers, FedEx argues that Plaintiff has failed
to make a prima facie case under CEPA because Plaintiff failed to
show that he had a reasonable belief that FedEx violated a law or
public policy. (Def.'s Br. at 21-22.) According to FedEx,
Plaintiff's failure under this prong is attributable to
Plaintiff's failure to identify a particular law or policy
underlying his Complaint. (<u>Id</u>.) According to FedEx, Plaintiff's
general allegation that FedEx's actions "violated the public

12

interests and policies of the State of New Jersey" are insufficient to satisfy the first prong of a prima facie case under CEPA. (Id. at 22 citing Complaint ¶ 34.)

FedEx's argument are not supported by case law. Rather, "a CEPA plaintiff need not cite 'any specific statute, rule or regulation which was allegedly violated' when disclosing employer wrongdoing or even filing a CEPA action." Blackburn, 179 F.3d at 94 (quoting Regan v. City of New Brunswick, 305 N.J. Super. 342, 702 A.2d 523, 528-29 (N.J. Super. Ct. App. Div. 1997)).[8] A CEPA claim protects those persons who disclose his or her employer's activities when "given the circumstantial evidence, a reasonable lay person would conclude that illegal activity was going on" and does not require that the claimant know the specific rule or regulation the employer allegedly violated. Young v. Schering Corp., 275 N.J. Super. 221, 645 A.2d 1238, 1244 (N.J. Super. Ct. App. Div. 1994).

Viewing the evidence in the light most favorable to Plaintiff, and extending to Plaintiff all reasonable inferences, the Court finds that Plaintiff has succeeded in establishing that

---

[8] The Blackburn court discusses the case of Mehlman v. Mobil Oil Corp., 153 N.J. 163, 707 A.2d 1000 (N.J. 1998). See 179 F.3d at 94. In Mehlman, the plaintiff complained about his employer's conduct without being aware of any specific laws, guidelines, or government polices that his employer was violating but the court nonetheless held that "specific knowledge of the precise source of public policy [allegedly violated] is not required." 707 A.2d at 1015-16.

he reasonably believed FedEx's conduct was violating either a law or public policy of the State of New Jersey that protects workers from dangerous working conditions, in particular from being compelled to use vehicles whose safety is questionable. If Plaintiff's version of the facts are to be believed, Plaintiffs complaints about the safety of FedEx vehicles reveal that he reasonably believed that FedEx was in violation of certain public safety regulations or policies that endangered Plaintiff, his co-workers and the driving public. Thus, summary judgment is inappropriate.

### 2. Plaintiff's Disclosure to FedEx Supervisors or Public Bodies.

FedEx next argues that Plaintiff has not satisfied the requirement that Plaintiff demonstrate that he disclosed or objected to FedEx's violation of law or public policy. (Def.'s Br. at 19.)  FedEx argues that no reasonably fact finder could determine that Plaintiff's completion of VIRs or off-hand and limited communication with FedEx managers constituted protected "whistleblowing" activities under CEPA.  (Id. at 20-21.)

For his actions to constitute "whistleblowing" activity under CEPA, Plaintiff must make an objection to or refuse to participate in a practice that Plaintiff reasonably believes to be a violation of law.  See N.J.S.A. §34:19-3(3).  Disclosure of what the plaintiff believes is contrary to public policy to either a supervisor or a public body would constitute

14

whistleblowing activities.  See id.; see also Abbamont v. Piscataway Tp. Bd. of Educ., 269 N.J. Super. 11, 634 A.2d 1055 (N.J. Super. Ct. App. Div. 1999).  Thus, in making a prima facie case, Plaintiff must demonstrate only that he raised objections or disclosed his concerns about the safety of FedEx vehicles to his supervisors as such disclosure would constitute "whistleblowing activities."

This Court finds that material issues of fact exist regarding whether Plaintiff made sufficient disclosures or objections about the safety of FedEx vehicles to his superiors and whether Plaintiff's refusal to continue driving his delivery truck on May 17, 2005 constituted "whistleblowing activities." First, in his opposition papers, Plaintiff claims that he made a number of objections and disclosures about the safety of FedEx vehicles by "repeatedly address[ing] his complaints to his supervisors."  (Pl.'s Opp. Br. at 19.) Specifically, Plaintiff claims that he repeatedly complained to his managers (specifically to managers Arora, Aker, and Gary Brown) on numerous occasions.  (Id.; see also Durst Depo. Tr. at 20, 111-12, and 116.)[9]  Certainly if Plaintiff had made the type of

_____

[9]  FedEx argues that Plaintiff had only a single verbal communications with his managers (Auror), which took place while the two were passing in the hallway, where Plaintiff mentioned that his vehicle had bald tires.  (Def.'s Br. at 21.)  In addition, FedEx asserts that Plaintiff also had a single conversation with his manager Aker regarding a non-functioning seat belt which, according to FedEx "cannot be construed as a

substantial objections and lodged the type of complaints he
testified to, Plaintiff would satisfy the prong of the test that
he disclose to his supervisors the activity that he deemed was a
violation of public policy.  However, FedEx disputes (1) that
Plaintiff made all of the disclosures he claims he did and (2)
that such disclosures made it clear to FedEx that he was
disclosing serious vehicle safety issues - as opposed to
identifying routine maintenance issues with FedEx vehicles as he
was required to do (in the form of twice-daily inspections and
completion of VIRs) as part of his job duties.  Because material
facts are in dispute, summary judgment is not appropriate.

      **3.   Adverse Employment Action Taken Against Plaintiff.**

    FedEx argues that it is entitled to summary judgment because
Plaintiff cannot show that FedEx took an adverse employment or
retaliatory action against him. (Def.'s Br. at 28.) CEPA
specifically defines "retaliatory action" as "the discharge,
suspension or demotion of an employee, or other adverse
employment action taken against an employee in the terms and
conditions of employment." N.J.S.A. 34:19-2(e). Plaintiff cannot
satisfy this prong of the test, according to FedEx, because
"[a]ll of the proof in the record - except Plaintiff's self-
serving statements - demonstrates that Plaintiff quit and was not
discharged by FedEx." (Def.'s Br. at 28.) Plaintiff argues that

_____

protected objection."  (<u>Id</u>.)

16

Case 1:03-cv-05186-JBS-AMD   Document 29   Filed 12/22/05   Page 17 of 21 PageID: 1077

he did not quit on May 17, 2003, rather he was refusing to complete his deliveries if, in doing so, he was forced to operate what he deemed was an unsafe vehicle. (Pl's Opp. Br. at 20.) Plaintiff testified that he repeatedly stated to manager Gary Brown that he was not quitting and was not aware that his employment at FedEx had ended until May 19, when he received a termination letter from FedEx. (Id. at 21.)

This Court finds that a material issue of a fact exists regarding whether Plaintiff quit his employment at FedEx or was involuntarily terminated. FedEx claims that Plaintiff quit his job. (Pl.'s Br. at 28.) Gary Brown and other witnesses present at the FedEx station on May 17, 2003 testified that, after Plaintiff refused to deliver his remaining packages, Plaintiff stated, "I quit. I'm done. I don't need this job any more." (Brown Depo. Tr. at 44; see also Foldes Decl. ¶ 6; Campbell Decl. ¶ 2.) Plaintiff denies this series of events. (Durst Depo. Tr. at 155-56.) Instead, Plaintiff testified that (1) he told Brown that he was not quitting and (2) because the conversation between he and Brown took place in an area of FedEx's warehouse in which the two men could not be overheard by any other FedEx employees. (Durst Depo. Tr. at 151-57.) Morever, Plaintiff did a number of actions that are inconsistent to someone who was voluntarily terminating their employment. Specifically, when asked by Brown to supply him with a letter stating that Plaintiff was quitting,

(See id. at 154.), Plaintiff prepared a letter stating he "would
be glad to drive a safe vehicle for FedEx." (Def.'s Br. Ex. 1G.)
Plaintiff also made several calls to the human resources
department at FedEx on May 19, 2003 (after receiving a
termination letter) telling them that he had not quit and would
like to return to work. (Durst Depo. Tr. at 227.) Such actions
are inconsistent with Plaintiff quitting his employment.  There
being a genuine issue of material fact as to whether FedEx took
adverse employment action against Plaintiff or whether Plaintiff
voluntarily terminated his employment with FedEx, the Court will
deny FedEx's motion for summary judgment on the claim.

### 4.   Causal Connection between Plaintiff's Alleged Complaints and his Termination.

FedEx next argues that Plaintiff has failed to show a causal
connection between his complaints about the maintenance and
safety of FedEx vehicles (both verbal and written) and his
termination. (Pl.'s Br. at 27-28.)  According to FedEx, Plaintiff
has failed to present any evidence that FedEx (1) construed
Plaintiff's completion of VIRs or his off-hand comments regarding
maintenance and safety issues as objections or complaints about
unlawful or improper conduct by FedEx or (2) took steps to
terminate his employment as retaliation for Plaintiff's comments.
(Id.) Rather, FedEx solicited comments regarding vehicle
maintenance and promptly responded to them.  (Id. at 28.)
Similarly, FedEx argues that Plaintiff also cannot establish a

18

causal connection between oral comments made to managers regarding maintenance issues and his termination of employment on May 17, 2003 because none of the managers that Plaintiff lodged complaints with were present on May 17, 2003 when Plaintiff refused to complete his route. (Id.) As such, Plaintiff "can offer no proof that gives rise to a reasonable inference that FedEx had a retaliatory motive based on Plaintiff's comments about safety and maintenance issues."  (Id.)

Plaintiff argues that summary judgment would be inappropriate because there is "a genuine dispute of fact pertaining to [Plaintiff's] statements on the date of his termination...that require an assessment of credibility." (Pl.'s Opp. Br. at 20-21.)  Moreover, Plaintiff argues that the short interval between his refusal to drive what he perceived to be an unsafe vehicle and his voicing vehicle safety concerns to Gary Brown and Plaintiff's termination permits the Court to infer causation.  (Id. at 21.)

In order to satisfy this prong of the CEPA test, Plaintiff must demonstrate that "a retaliatory motive played a part in the adverse employment [action.]" Young, 645 A.2d at 1241.  A causal connection is a key factor to proving a claim under CEPA because CEPA "does not insulate the complaining employee from discharging or disciplinary action for reasons unrelated to the complaint." Hancock v. Borough of Oakland, 347 N.J. Super. 350, 790 A.2d 186

(N.J. App. 2002).  However, temporal proximity of the adverse employment action to a plaintiff's protected conduct can give rise to an inference of causation.  <u>See</u> <u>Bowles v. City of Camden</u>, 993 F. Supp 225, 262 (D.N.J. 1998); <u>McCullough v. City of Atlantic City</u>, 137 F. Supp. 2d 557, 573 (D.N.J. 2003).

In assessing whether Plaintiff has satisfied this prong of a CEPA claim, this Court again finds that numerous material factual issues exists that make summary judgment inappropriate. Specifically, material questions of fact exist as to (1) whether Plaintiff quit or was fired, and (2) whether Brown's question regarding whether Plaintiff was quitting was said and FedEx in retaliation for either Plaintiff's refusal to drive what Plaintiff deemed to be an unsafe vehicle or due to his complaints regarding the safety of FedEx's vehicles.[10]  There being a genuine issue of material fact as to whether FedEx took adverse employment action against Plaintiff in retaliation for "whistleblowing" activities, the Court will deny FedEx's motion for summary judgment on the claim.

## III. <u>CONCLUSION</u>

For the foregoing reasons, this Court will deny FedEx's motion for summary judgment.  In finding that there are genuine issues of material fact with respect to Plaintiff's prima facie

---

[10]  Plaintiff testified that, on four different occasions, Plaintiff complained to Brown that the truck Plaintiff was using had broken down.  (Durst Depo. Tr. at 116.)

case under CEPA, this Court need not address either (1) arguments made by FedEx that FedEx had a legitimate, non-retaliatory reason for terminating Plaintiff,(Def.'s Br. at 28-30), or (2) Plaintiff's argument that summary judgment is inappropriate because FedEx has failed to retain and/or produce vital discovery that would have been helpful to Plaintiff case. (Pl.'s Opp. Br. at 22-23.)

The accompanying Order is entered.


**December 22, 2005**                      **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge

21