```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JAMES DURST,<br><br>                Plaintiff,<br><br>   v.<br><br>FEDEX EXPRESS,<br><br>               Defendant. | HON. JEROME B. SIMANDLE<br><br>Civil Action<br>No. 03-5186 (JBS)<br><br>**OPINION** |

APPEARANCES:

Dennis J. Crawford, Esq.
Robert G. Feldman, Esq.
LAW OFFICES OF DENNIS J. CRAWFORD
619 S. White Horse Pike
Audubon, NJ 08106
    Attorneys for Plaintiff

Dara P. Newman, Esq.
SIMON MORAN, P.C.
1600 Market Street
Suite 2020
Philadelphia, PA 19103
    _and_
Barak J. Babcock, Esq.
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Floor
Memphis, TN 38125
    Attorneys for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court upon Plaintiff James Durst's ("Plaintiff") motion _in limine_ seeking an adverse inference jury instruction at trial related to certain evidence that Plaintiff alleges Defendant FedEx Express ("FedEx") destroyed.  For the reasons expressed below, Plaintiff's motion

will be denied.

I.   **Background**

From November 14, 2002 until May 17, 2003, Plaintiff was employed as a part-time courier at FedEx's Princeton, New Jersey distribution station.  Plaintiff worked the afternoon shift four days each week and the morning shift on Saturdays.  As part of his daily courier duties, Plaintiff, like all FedEx couriers, conducted regular vehicle inspections.  During the inspections, Plaintiff was to inspect items including the vehicle's headlights, emergency four-way flashers, exterior mirrors, tires, fluid levels, belts and hoses, doors and seat belts, check for any "play" in the steering wheel and test the brakes of the vehicle.  Each FedEx courier was to perform pre-trip and post-trip inspections every day and report the results on a Vehicle Inspection Report ("VIR").

Safety and maintenance issues noted by couriers on VIRs are provided to FedEx's mechanics for redress.  Plaintiff claims, however, that not all of the safety issues highlighted in his VIRs were addressed by FedEx mechanics.  FedEx claims that if a VIR identified a problem, the vehicle would not go on the road again until a FedEx mechanic took necessary corrective action. FedEx also states that FedEx mechanics conduct regular preventative maintenance on vehicles every four months and perform random audits on all trucks in FedEx's fleet.

Plaintiff contends that he experienced numerous safety issues with vehicles he was required to drive for FedEx including "hazardous mirrors" that he could not see out of, violent shaking of the truck's steering wheel when the truck reached certain speeds, bald tires (that he attributed to nearly causing an accident), smoke "pouring out of the heater vents" (preventing him from seeing the road), and multiple vehicle breakdowns.  The parties disagree about whether Plaintiff properly made management at FedEx aware of his safety concerns.

On Saturday, May 17, 2003, Plaintiff was unable to insert the key into the ignition of his truck after making a stop on his route.  FedEx sent a replacement truck out to Plaintiff.  After moving his remaining undelivered packages to the replacement truck, Plaintiff returned to FedEx's station, deciding not to finish his route.  At the station, Plaintiff made preparations to leave and placed three remaining undelivered packages in the area designated for undelivered packages and told Saturday manager Gary Brown that he would not complete his route. (Id.) In response, Brown told Plaintiff, "I take it if you're not delivering these packages, then you're quitting."  (Id. at 156.) Plaintiff responded that he was not quitting and would not deliver the remaining packages because of the unaddressed safety concerns and the prior vehicle breakdowns.  Upon insistence from Brown, Plaintiff provided Brown with a letter stating that he

3

refused to operate one of the unsafe FedEx vehicles due to "serious mechanical and safety issues [and that] [n]othing has ever been done to rectify these serious safety issues."

On the morning of Monday, May 19 -- a few hours before Plaintiff's next scheduled shift -- Plaintiff received a "termination letter" from FedEx.  After receiving the letter, Plaintiff tried unsuccessfully to resolve matters with representatives of FedEx's human resources.  Failing to resolve matters, Plaintiff did not return to work.

This Court denied FedEx's motion for summary judgment on December 22, 2005.  On May 3, 2006, Plaintiff filed this motion in limine seeking an adverse inference charge to be given to the jury that evidence that FedEx destroyed or otherwise failed to maintain would have been favorable to Plaintiff and unfavorable to Defendant. [Docket Item No. 34.]  Defendant filed opposition on May 10, 2006 and this Court held oral argument on the motion on May 17, 2006.  [Docket Item Nos. 36 and 37.]  At oral argument, the Court requested that the parties make additional submissions which were made on May 19, 2006 (by FedEx) and on May 22, 2006 (by Plaintiff). [Docket Item Nos. 38 and 44.]

## II. Legal Standard for a Spoliation Inference

Three remedies are available for the wrong known as evidence spoliation -- where relevant evidence has been lost, hidden or destroyed.  First, the aggrieved party may seek a so-called

4

spoliation inference which allows a jury to presume that the evidence the spoliator destroyed or concealed would have been unfavorable to him or her.  See Scott v. IBM Corp., 196 F.R.D. 233, 247 (D.N.J. 2000) (citing Cedars Sinai Med. Ctr. v. Superior Court, 954 P.2d 511 (Cal. 1998)); see also Costello v. City of Brigatine, 2001 U.S. Dist. LEXIS 8687 at *75. (D.N.J. 2001). Alternatively, evidence of spoliation can be a basis for discovery sanctions.  See id.  Third, the aggrieved party may bring a separate tort against the spoliator.  See Rosenblit v. Zimmerman, 166 N.J. 391, 401-02 (2001).  A party's access to the above-described remedies depends in large part on when the destruction or concealment of evidence is revealed.  See Costello, 2001 U.S. Dist. at *76.

Because Plaintiff appears to be seeking an "adverse inference charge to be given to the jury," this Court will only address whether this Court should grant a spoliation inference. (Pl.'s Br. at 1.)  As such, the Court's inquiry must focus on whether these circumstances of spoliation, discovered in advance of trial, should give rise to a jury instruction regarding the spoliation inference.  Such an instruction permits an inference that the destroyed evidence would have been unfavorable to the offending party's position.  See Scott, 196 F.R.D. at 248 (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994)). "When the contents of a document are relevant to an

5

issue in the case, the spoliation inference is nothing more than the common sense observation that a party who hides relevant evidence until the eve of trial did so out of a well-founded fear that the contents would harm him." Costello, 2001 U.S. Dist. at *76-77 (citing Scott, 196 F.R.D. at 248); see also Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995).

A spoliation inference is only appropriate if the Plaintiff has demonstrated four essential factors: (1) that the "evidence in question [is] under the adverse party's control;" (2) "that there has been an actual suppression of this evidence, i.e., that [the evidence at issue] was intentionally untimely disclosed;" (3) that "the untimely disclosed evidence was relevant" to the plaintiff's case; and (4) "that it was reasonably foreseeable that [the spoliated evidence] would later be discoverable."[1] Costello, 2001 U.S. Dist. at *76-79 (citing Scott, 196 F.R.D. at 248.

### III. Discussion

Plaintiff's motion in limine focuses on seven "key discovery items" that Plaintiff alleges were not produced despite Plaintiff's demands and FedEx policies regarding retention of these records.  The discovery items are:

---

[1] The Costello court held that "[w]hile a litigant is under no duty keep or retain every document in its possession, even in advance of litigation it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Id. at *78-79.

- An accident report for Vehicle 211070 on October 23, 2003;

- VIR books for the following: Vehicles 216199, 204836, and 210784 and the vehicle history for Vehicle 216199 (from January 1999 through January 2002);

- Police reports of accidents involving FedEx trucks;

- Body repair vehicle history for Vehicles 210784 (missing from December 10, 2003 through the present);

- FAST e-mails identifying repeated problems for vehicles drive by Plaintiff;

- Records related to the towing of Plaintiff's truck that broke down on May 17, 2003.

Plaintiff alleges that a spoliation inference is the most suitable remedy for FedEx's non-production of these documents. Plaintiff argues that the four essential elements needed for a spoliation inference are met. The first element is satisfied because FedEx alone controlled the VIRs and all documents related to vehicle maintenance should have been retained as a routine matter pursuant to FedEx's document retention policy. Second, Plaintiff argues that this Court should conclude that FedEx actually suppressed the evidence requested by Plaintiff because FedEx had exclusive control of the records that Plaintiff now seeks but cannot account for them.[2] Plaintiff argues it is reasonably foreseeable that the evidence would later be

---

[2] Plaintiff cites Mosaid Tech., Inc. v. Samsung Electronics Co., Ltd., 348 F.Supp. 2d 332, 336 (D.N.J. 2004) for the proposition that, when records are under the exclusive control of a party and yet that party cannot account for their location, a court should find that party actually suppressed evidence.

discoverable because FedEx would be "hard pressed to argue that it was not reasonably foreseeable that this matter would be the subject of litigation and the vehicle inspection records would later be discoverable."[3] (Pl.'s Br. at 12.)  Finally, Plaintiff argues that the lack of these documents has "handicapped Plaintiff's ability to show the objective basis for his subjective belief that the vehicles he operated were a maintenance and safety hazard" and that he was prejudiced in his ability to establish that the vehicles he operated had recurring problems that FedEx failed to address.  (Pl.'s Br. at 13.)

FedEx makes two general arguments that a spoliation inference is not warranted.  (Def.'s Opp. Br. at 5.)  First, FedEx argues that, "before the Court will order a spoliation inference[,] the moving party would need to establish that the particular document was actually requested in discovery and the non-moving party either agreed to produce such documents or a court affirmatively ordered the other party to produce the documents," pointing out that on September 29, 2004, Plaintiff indicated to U.S. Magistrate Judge Ann Marie Donio that the only remaining discovery dispute related to the production of OSHA

---

[3] Specifically, Plaintiff argues that the fact that (1) FedEx's human resources sent a May 18, 2003 termination letter to Plaintiff and (2) that Plaintiff told FedEx managers on May 18, 2003 that "he was a whistleblower," should have made FedEx management "aware that the situation could lead to litigation." (Id. at 12-13.)

complaints and accident reports under the oversight of FedEx employee Jeff Smock. (Def.'s Opp. Br. at Ex. 5.) On October 20, 2004, Magistrate Judge Donio did not instruct FedEx to produce any additional documents and Plaintiff never sought a motion to compel production. Second, according to FedEx, Plaintiff cannot satisfy at least one of the two critical elements established in Scott - that FedEx actually suppressed or destroyed any evidence or that the evidence is relevant to Plaintiff's claims - for all six pieces of evidence for which Plaintiff seeks a spoliation inference. (Id. at 7.)

**A.   Accident report for Vehicle 211070 on October 23, 2003**

Plaintiff seeks an accident report for Vehicle 211070 related to an accident that took place on October 23, 2003. FedEx points out that, in its September 17, 2004 letter from Todd Taylor, Esq. (Senior Attorney/Litigation for FedEx) to Robert G. Feldman, Esq. (attorney for Plaintiff), FedEx communicated that it was unaware of any accident report for Vehicle 211070 related to an October 23, 2003 event (although FedEx did provide Plaintiff with other accident reports related to Vehicle 211070). (Def.'s Opp. Br. at Ex. 4.) Here, in the face of FedEx's September 17, 2004 letter to Robert Feldman stating that FedEx is not aware of any accident report for Vehicle No. 211070 on October 23, 2003, Plaintiff has failed to satisfy his burden of proving one of the four factors necessary for the Court to grant

9

a spoliation inference - namely, that the "evidence in question be under the adverse party's control." Costello, 2001 U.S. Dist. at *76-77.  In order to grant a spoliation inference, this Court would be required to speculate as to the existence of such an accident report.  As such, the Court will deny Plaintiff's motion in limine with respect to this evidence.

> **B.   VIR books for Vehicles 216199, 204836, 210784 and the Complete History of Vehicle No. 216199 for January 1, 1999 through January 1, 2002.**

Plaintiff seeks VIR records for three vehicles Plaintiff drove while employed at FedEx (and a complete vehicle history for one of the vehicles).  FedEx argues that (1) at the last discovery conference before Judge Donio (in October, 2004), Plaintiff failed to raise the issue that it still required these three VIR books and vehicle repair history and (2) failed to provide FedEx or the Court with any explanation of why these VIR books are relevant to his claims.  (Id.)  FedEx argues that the VIRs it provided to Plaintiff - those of Plaintiff and another courier for the time period January 2003 through May 2003 - are the only VIRs relevant Plaintiff's claims.  (Id.)

> **1.   Vehicle No. 204836**

In its submission made after oral argument, FedEx has identified Vehicle No. 204836 as Plaintiff's primary vehicle. FedEx has produced 94 VIRs for Vehicle No. 204836 spanning from

January 2, 2003 until May 15, 2003.[4]  FedEx has also submitted the Vehicle Maintenance Folders for this vehicle.  Thus, with the exception of approximately five days (excluding weekends when Vehicle 204836 appears not to have been in use), it appears that FedEx has produced at least one VIR for each day the vehicle was used from January 3, 2003 until May 13, 2003.[5]

Plaintiff's motion papers does not address the central issue here - that Plaintiff failed to file a motion to compel production of these documents after the last discovery conference (held in October, 2004) before Judge Donio and is now seeking a spoliation inference on what amounts to a simple discovery dispute.  Under L. Civ R. 37.1(a), Plaintiff should have raised this issue (and all other remaining discovery disputes) with Judge Donio by telephone conference call or letter after the final discovery conference in October of 2004.  If this discovery matter was still not resolved after raising the issue in a telephone conference call or with a letter to Judge Donio, Plaintiff could have filed a motion to compel the production of the VIRs pursuant to L. Civ. R. 37.1(b).  This Court will not allow either a spoliation inference as to these documents or Plaintiff to reopen discovery on the eve of trial to resolve a

---

[4] Plaintiff was only employed at FedEx from November 14, 2002 through May 17, 2003.

[5] In numerous cases, FedEx has produced the pre-shift and post-shift VIR.

11

discovery matter that should have been raised with Judge Donio long ago.

### 2. VIR Books for Vehicle Nos. 216199 and 210784

With respect to Plaintiff's request for a spoliation inference regarding VIR Books for 216199 and 210784, FedEx reaffirmed in its May 19, 2006 submission that the reports related to these two vehicles are not relevant to Plaintiff's CEPA claim because Plaintiff only drove Vehicle 216199 on two occasions (on January 6, 2003 and January 31, 2003) and Vehicle 210784 on a single occasion (February 8, 2003).  As such, even assuming FedEx had an obligation to retain VIRs from these vehicles based on Plaintiff's June 2003 demand letter, FedEx would not have retained the January 2003 and February 2003 VIRS under its document retention policy (which calls for FedEx to retain documents for 90 days in addition to the current month.) As such, FedEx only retained documents for March, April, May, and June of 2003.

Plaintiff argues that FedEx should have begun retaining relevant documents from the date of Plaintiff's termination (May 17, 2003) and thus retained documents for February, March, April and May of 2003.  This Court disagrees.  A litigant "is under no duty to keep or retain every document in its possession...[only] what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Costello, 2001

12

U.S. Dist. at *76-79.  Because Plaintiff only drove the vehicles in question one or two times, this Court finds that it was not reasonably foreseeable at the time of Plaintiff's termination that the VIRs for these trucks would be requested by Plaintiff in connection with a lawsuit brought by Plaintiff.  As such, a spoliation inference regarding this evidence is not warranted.

### 3. Complete Vehicle History for Vehicle No. 216199

Plaintiff's motion seeks a spoliation inference with respect to the complete vehicle history for Vehicle No. 216199 from January 1, 1999 through January 1, 2002.  At oral argument, Plaintiff conceded that, pursuant to Judge Donio's discovery parameters, information regarding vehicle history prior to 2001 is not relevant.  With respect to the vehicle history during 2001, Plaintiff has failed to demonstrate either (1) that FedEx is in possession of these records or, in the alternative (2) that FedEx should have retained these records as it was reasonably foreseeable that Plaintiff would seek this vehicle history during discovery.  Both are essential elements in proving that a spoliation inference is warranted.  See Costello, 2001 U.S. Dist. at *76-77.  In its September 17, 2004 letter to Robert G. Feldman, FedEx states that it has "produced the complete vehicle maintenance jacket for Vehicle No. 216199 for the 18-month period in which they are retained in the regular course of business."  Thus, given FedEx's policy to retain all vehicle maintenance

13

records for 18 months, FedEx would have already disposed of most if not all of 2001's vehicle maintenance records by the time FedEx received Plaintiff's June 2003 demand letter.

### C. Police reports of accidents

Plaintiff mentions that it seeks a spoliation inference generally for "police reports of accidents." In his supplemental submission to the Court, after inquiry with management at FedEx's Princeton facility, counsel for FedEx represented that FedEx does not have any police reports regarding any accidents involving trucks from the Princeton station during the time of Plaintiff's employment. Thus, while Plaintiff may be correct that such accidents were reported to the police, FedEx did not get or retain any report generated by the Police. As such, Plaintiff has failed to prove an essential element needed for a spoliation inference - that the evidence in question was under FedEx's control. See Costello, 2001 U.S. Dist. at 76-77. Moreover, this Court agrees with FedEx that such police reports could have been obtained by Plaintiff acting on his own (through requests under the Freedom of Information Act or by using the Court's subpoena power) as the accident reports surely would have listed the location and date of the accident.

### D. Body repair vehicle history of Vehicle 210784 for December 10, 2003.

FedEx argues that, as indicated in its September 17, 2004 letter to Robert Feldman, FedEx has produced the complete vehicle

14

history for Vehicle 210784. (Def.'s Opp. Br. at Ex. 4.) Moreover, FedEx argues that Plaintiff has not established that FedEx ever even possessed any particular body repair documents for December 10, 2003.  (Def.'s Opp. Br. at 8.)

As discussed in Section III.B.1, <u>supra</u>, the issue of whether FedEx has produced certain vehicle repair histories of should have been raised before Judge Donio, either during the parties' Rule 37.1(a) discovery conference, later in either a request for a telephone conference/letter to Judge Donio or, if such a conference or letter did not resolve the matter, a motion to compel production of documents pursuant to L. Civ. R. 37.1(b). Indeed, FedEx takes the position that it complied with Plaintiff's discovery request regarding this vehicle - FedEx's September 17, 2004 letter to Robert Feldman indicates that FedEx has produced "the complete vehicle maintenance jacket for Vehicle No. 210784."  Further, this was not Plaintiff's primary vehicle.  Because this matter is essentially a discovery dispute concerning the completeness of discovery, the Court finds that it would be unfair to FedEx to give a spoliation inference regarding this evidence.

> **E.   FAST e-mails identifying repeated problems for vehicles driven by Plaintiff**

FedEx asserts that, as indicated in its August 9, 2004 letter to Robert Feldman, the technicians and mechanics at FedEx's Princeton station did not send any e-mails to the FAST

system "during the relevant time period" and Plaintiff has no evidence that any FAST e-mails were ever sent.  (Def.'s Br. at 9; Def.'s Br. at Ex. 4.)  Here again, Plaintiff has failed to provide any evidence that technicians and mechanics at the Princeton station sent any e-mails through the FAST system or that FedEx was in possession of any such emails.  Further, FedEx has never been ordered to produce these documents nor has it agreed to do so.  Thus, Plaintiff has failed to prove an essential element necessary for this Court to grant a spoliation inference - that the "evidence in question [was] under the adverse party's control."  Costello, 2001 U.S. Dist. at *76-77 (citing Scott, 196 F.R.D. at 248.)  As such, the Court will not grant a spoliation inference as to this evidence.

**F.  Towing records for Plaintiff's truck on May 17, 2003**

Plaintiff seeks "towing records" for Plaintiff's truck on May 17, 2003.  FedEx argues that it has already produced the invoice produced by the towing company that towed his truck on May 17, 2003.  Moreover, FedEx states that Plaintiff has failed to prove (1) that such additional towing records exists or (2) that such records would be relevant to Plaintiff's claim.  Finally, FedEx asserts that Plaintiff could certainly have obtained all information regarding the towing directly from the towing company that performed the towing.

Plaintiff has not proffered any evidence that any towing

16

records existed (aside from the towing service's invoice FedEx provided to Plaintiff) with respect to the May 17, 2003 towing. Thus, in order for this Court to give a spoliation inference, this Court would be speculating on the existence of such evidence. This Court declines to do so.

### IV.     CONCLUSION

For the reasons discussed above, this Court denies Plaintiff's motion in limine. The accompanying Order is entered.


**June 2, 2006**                                  **s/ Jerome B. Simandle**
Date                                                JEROME B. SIMANDLE
                                                    United States District Judge